# Rickner PLLC

Stephanie Panousieris | stephanie@ricknerpllc.com

July 16, 2025

**Via ECF**
Hon. Anthony J. Brindisi, U.S. District Judge
Alexander Pirnie Federal Bldg. and U.S. Courthouse
10 Broad Street
Utica, NY 13501

      Re:    *Girard v. St. Louis, et. al.*, Case No, 9:22-cv-0339

Your Honor:

Consistent with Your Honor's Pre-Trial Order (Dkt. 70), Plaintiff submits this letter brief ahead of the jury trial scheduled to begin on July 28, 2025 to preview Plaintiff's case for the Court.

## I.    Plaintiff's Factual Allegations

On July 11, 2021, Plaintiff Chauncey Girard was incarcerated at Franklin Correctional Facility, where Defendants St. Louis and Hoit were working as correction officers, and Defendant Gonyea was working as an Area Sergeant. At the time, Plaintiff was suffering from a pre-existing shoulder and back injury, among other medical conditions, for which he frequently requested both emergency and non-emergency medical attention, or "sick call." Defendant St. Louis, the assigned dormitory officer for Plaintiff's housing area, was growing increasingly irritated with Plaintiff for his repeated requests for emergency sick call.

That evening, Plaintiff approached St. Louis at the officer's desk and, once again, requested that he be taken to medical for emergency sick call. He received no direct response to his inquiry. Shortly thereafter, St. Louis approached Plaintiff and said he wanted to talk, leading Plaintiff into the laundry room of the dorm. Plaintiff thought that the officer wanted to discuss the sick call request, and he followed the officer when ordered to do so. Once inside the laundry room—a small space without any cameras—St. Louis closed the door and punched Plaintiff in the face, breaking Plaintiff's right orbital floor and causing him to fall to the ground.

St. Louis then exited the laundry room, ordered the incarcerated population back to their cubes, and radioed for assistance. Defendant Lt. Gonyea, the Area Sergeant, responded to the recreation room in the dorm, where St. Louis had ordered Plaintiff to sit, separated from the rest of the incarcerated population housed in the dorm. While attempting to report the assault, Gonyea repeatedly threatened Plaintiff, instructing him to report the injury as a slip and fall.

Plaintiff was eventually cuffed and led out of the dorm by Hoit and Gonyea, who stopped the escort between two sets of doors—a second secluded location with no cameras—where Hoit scolded Plaintiff for failing to call the officers "sir," and proceeded to hit Plaintiff in the back of his head, causing a laceration to the lip when Plaintiff's face to hit the wall. Sgt. Gonyea, who was standing and watching this incident, failed to intervene to stop the illegal assault.

Rickner PLLC

Plaintiff was subsequently placed into a van and driven to the infirmary with Hoit and Gonyea, during which the officers threatened Plaintiff about the assaults, repeating that he needed to tell medical staff that he slipped and fell.

Inside the infirmary, Plaintiff was briefly seen by a nurse, and reported the assault. The nurse, however, made no notations concerning Plaintiff's statements, and simply followed the officer's direction to write "one man fight" on his medical record. Also, while in the infirmary, Plaintiff was asked by a different Sergeant if he needed protective custody from any incarcerated person. Plaintiff declined, reporting that he was assaulted by an officer, not an incarcerated person. Plaintiff was then referred to an outside hospital for a higher level of care.

Plaintiff was transferred to Alice Hyde Medical Center, where he received stitches to two subcutaneous lacerations above and below his right eye. He was also diagnosed with an orbital floor fracture, and was transferred to Albany Medical Center for further diagnostics and treatment.

To cover up these two unjustified and gratuitous uses of force, Defendants repeatedly instructed Plaintiff to report that he slipped and fell, while simultaneously reporting that Plaintiff's injuries were more consistent with a punch to the face than with a fall. Because the officers denied using any force on Plaintiff, no Use of Force reports were generated, allowing the officers to avoid having photographs taken of their hands after the assaults. Instead, the officers claimed that Plaintiff was involved in a "one man fight" with an unidentified person.

Defendants will likely testify that they conducted upper body checks on the population housed in dorm K2 and found no evidence of injury or involvement in a fist fight. No incarcerated people, other than Plaintiff, was charged with fighting in relation to this incident, and no one—either Defendants or nonparty DOCCS staff—ever identified the unknown person whom Defendants allege hit Plaintiff, causing his serious injuries.

## II.  Evidentiary & Legal Issues

All evidentiary issues known to Plaintiff at this time have been raised in the parties' joint pre-trial stipulation and motions *in limine*. Plaintiff intends to rely on his own testimony, the testimony of Defendants, Plaintiff's prior consistent statements, medical records, and photographs of his injuries to prove his case. He will also point to discrepancies in the officers' version of events which will provide circumstantial evidence of Defendants' untruthfulness with respect to the two uses of force at issue in the case.

In addition to the evidentiary issues raised in Plaintiff's motion *in limine*, Plaintiff previews for the Court the following legal issues may arise at trial, specifically during the charge conference:

### a.  Defendants Cannot Advance a Qualified Immunity Defense

Defendants have indicated in the Joint Pre-Trial Stipulation that they plan to raise a qualified immunity defense. However, if the officer's defense is that no force was used on Plaintiff, they cannot also benefit from the doctrine of qualified immunity, which necessarily requires that force was to apply to test as to whether the type of force used, under the circumstances of this case, was

clearly established. Since the crucial factor in the qualified immunity analysis is "whether the official acted reasonably *in the particular circumstances that he or she faced*," *Edrei v. Maguire*, 892 F.3d 525, 539 (2d Cir. 2018), *cert denied*, 139 S. Ct. 2614 (2019) (emphasis added), entitlement to qualified immunity cannot plausibly be alleged where the Defendants categorically deny having faced the "circumstances" in question. *See also Cutlass Prods., Inc. v. Bregman*, 682 F.2d 323, 327 (2d Cir. 1982) (special interrogatories have to "clearly present the material fact issues raised by the pleadings and evidence.").

### b. Plaintiff is Entitled to a Punitive Damages Instruction

Plaintiff's proposed jury instructions include a section regarding punitive damages. Plaintiff anticipates that the evidence presented at trial will be sufficient to demonstrate that Defendants' conduct was "motivated by evil motive or intent, or [that] it involves reckless or callous indifference to the federally protected rights of others." *Cameron v. City of New York*, 598 F.3d 50, 69 (2d Cir. 2010) (quoting *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 121-22 (2d Cir. 2006) (internal quotation marks omitted)).

Plaintiff respectfully requests the opportunity to supplement these citations at the appropriate time, prior to the charge conference, to specifically address these issues in light of the admitted evidence.

Sincerely,

Stephanie Panousieris
*Attorneys for Plaintiff*